**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALAN JOHNSON, | Civil Action No. 08-1752 (MLC) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| GEORGE W. HAYMAN, et al., | |
| Defendants. | |

**APPEARANCES**:

    ALAN JOHNSON, #143111B Pro Se, New Jersey State Prison
    P.O. Box 861, Trenton, New Jersey 08625

**COOPER, District Judge**

Plaintiff, Alan Johnson, a prisoner incarcerated at New Jersey State Prison ("NJSP"), seeks to file a Complaint alleging violation of his constitutional rights under 42 U.S.C. § 1983. Based on Plaintiff's affidavit and prison account statement, the Court will grant his application to proceed in forma pauperis. See 28 U.S.C. § 1915. As required by 28 U.S.C. § 1915(e)(2)(B), the Court has screened the Complaint for dismissal and, for the reasons set forth below, will dismiss the Complaint.

### I.  BACKGROUND

Plaintiff sues several New Jersey Department of Correction ("NJDOC") officials. He asserts the following facts, which the Court must regard as true for this review. See Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007). Plaintiff alleges that he has been confined in the Management Control Unit ("MCU") at NJSP since 1997 when officials determined that he was involved in

an attack on NJSP staff on August 18, 1997. According to the Complaint and attachments, the MCU Review Committee most recently determined to continue his MCU classification on February 2, 2007, because Plaintiff — although having completed the Behavior Modification program and participating in the Cage Your Rage program — continues to pose a threat to the safety and security of any correctional facility due to his 1997 attack on staff.

Plaintiff asserts that on January 5, 2007, he sent a letter to defendant George Hayman, NJDOC Commissioner, complaining that the failure of MCU Review Committee members to release him from MCU is due to bias and discrimination, since Plaintiff was not involved in the 1997 incident. Plaintiff claims in the letter that officials inaccurately accused him of involvement because they discovered his personal relations with a social worker at the prison a month before the incident. The letter ends: "Note: In the event, Administration, Custody, or any other officials functioning within this facility, decide to implement any form or level of 'Punitative [sic] Retaliations' derive[d] from this complaint; your office will immediately be on notice, as well as the Federal Courts in my pursuit of Civil, and Criminal charges." (Letter to George Hayman dated 1-5-07, p. 4.)

Plaintiff asserts that on February 27, 2007, after he had asked to see a social worker to have his legal papers notarized, defendant Weresky removed Plaintiff from his cell and confiscated

all of his belongings, including his legal papers regarding an appeal to the Appellate Division from the MCU classification decision.  Plaintiff alleges that, although defendant Dolci returned much of Plaintiff's property to him on March 21, 2007, the following items were missing: legal papers to be notarized, photo album, and 53 pornographic video catalogues.  Plaintiff asserts that on March 22, 2007, Dolci charged Plaintiff with attempting to obtain drugs, and possession of gang literature, because Dolci wanted to provide the MCU committee with a basis to continue his MCU classification.

Plaintiff further alleges that officers Dolci, Lincoln, Weresky, and others belong to a group created to harass inmates, confiscate inmate property and perform unnecessary beatings.  Plaintiff asserts that this group embarked on a campaign to harass him because he sent the January 5, 2007, complaint to Hayman.  Plaintiff alleges that unspecified officers falsely accused him of membership in the "Bloods" and the "Aryan Brotherhood" in order to place his life in danger.

Plaintiff also alleges that on August 29, 2007, he appealed the MCU classification decision to the New Jersey Appellate Division.  He asserts that defendant officer Nolan retaliated against him by: (1) on August 30, 2007, obtaining permission to search Plaintiff's cell; (2) on February 16, 2008, instructing officer Leverety to close Plaintiff between a doorway; (3) on

February 19, 2008, swinging his baton toward Plaintiff's head as if he were going to strike Plaintiff; and (4) on February 28, 2008, along with officer Figure, falsely charging him with threatening Nolan.  Plaintiff alleges that on March 6, 2008, a hearing officer dismissed the charge, and on the same day Donald Mee instructed Lt. Moran to charge Plaintiff again.

Plaintiff raises the following claims under § 1983: (A) the MCU review committee violated his due process and equal protection rights by denying release; (B) the confiscation of his legal papers deprived him of access to courts; (C) failure to protect in violation of the Eighth Amendment; (D) retaliation for sending the January 5, 2007, letter and appeal to the Appellate Division. Plaintiff seeks damages and injunctive relief directing his release from MCU and the return of his property, and prohibiting future retaliation.

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Court, prior to docketing or as soon as practicable thereafter, must review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The Court must sua sponte dismiss a claim if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

4

A complaint "must contain (1) a short and plain statement of the grounds of the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought". Fed.R.Civ.P. 8(a). Also, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990). As for failure to state a claim, the Third Circuit Court of Appeals has clarified the standard, in light of the decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007):

> [T]he notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a[] showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. It remains an acceptable statement of the standard, for example, that courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker, 292 F.3d at 374 n.7. See also Twombly, 127 S.Ct. at 1969 n.8 (citing as consistent with its rejection of the "no set of facts" language the statement that "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial , establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted") (citation omitted).
>            *                    *                    *
> The issues raised by Twombly are not easily resolved, and likely will be a source of controversy for years to

5

> come. Therefore, we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context. Reading Twombly to impose a "plausibility" requirement outside the § 1 context, however, leaves us with the question of what it might mean. "Plausibility" is related to the requirement of a Rule 8 "showing." In its general discussion, the Supreme Court explained that the concept of a "showing" requires only notice of a claim and its grounds, and distinguished such a showing from "a pleader's bare averment that he wants relief and is entitled to it." Twombly, 127 S.Ct. at 1965 n.3. While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.
>
> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading state, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element . . . .
>
> The complaint at issue in this case clearly satisfies this pleading standard, making a sufficient showing of enough factual matter (taken as true) to suggest the required elements of [the] claims.

Phillips v. County of Allegheny, 515 F.3d 224, 233, 234-35 (3d Cir. 2008) (cite and internal quotes omitted); see Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) ("To survive a motion to dismiss, a plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).") (citations and internal quotation marks omitted).

The sufficiency of a pro se pleading must be construed liberally in favor of the plaintiff, even after Twombly. See

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  A pro se prisoner plaintiff needs to allege only enough factual matter (taken as true) to suggest the required elements of the claim(s) asserted, Twombly, supra.; but the Court need not credit a pro se plaintiff's "legal conclusions."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

### III. DISCUSSION

To recover under 42 U.S.C. § 1983 — which authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law — a plaintiff must show:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

**A.   MCU Classification**

Plaintiff complains that his continuing classification to the MCU violates due process and equal protection.  The equal protection claim fails because Plaintiff has alleged no supporting facts, but this Court will consider whether the Complaint states a due process claim.

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or

property, without due process of law." U.S. Const. amend. XIV. To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process. See Fuentes v. Shevin, 407 U.S. 67 (1972). Only if the answer is yes, is the second step, determining what process is due, necessary. See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under that clause itself or be created by mandatory language in state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980). A convicted inmate such as Plaintiff has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population. See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242; Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

The state may also create a protected liberty interest through a statute or regulation requiring placement in the general population under certain circumstances.  See Sandin, 515 U.S. at 483-84.[1]  "[M]andatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Torres, 292 F.3d at 151 (quoting Sandin, 515 U.S. 484).  But "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); see Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in

---

[1] New Jersey regulations do not require placement in general population.  Rather regulations require officials to place an inmate in MCU under certain circumstances:

> (a) An inmate shall be assigned to the M.C.U. when the [committee], after considering the criteria in N.J.A.C. 10A:5-2.4, concludes that the inmate poses a substantial threat:
>   1. To the safety of others;
>   2. Of damage to or destruction of property; or
>   3. Of interrupting the operation of a State correctional facility.
> (b) Procedures for [committee] hearings described in N.J.A.C. 10A:5-2.6 shall be followed and completed prior to placement in M.C.U.
> (c) If there is a need for immediate placement in the M.C.U., such placement shall be made in accordance with N.J.A.C. 10A:5-2.8.

N.J. Admin. Code § 10A:5-2.5.

being free of indefinite segregated confinement in Security Threat Group Management Unit). Thus, Plaintiff's confinement in MCU does not impose an atypical and a significant hardship in relation to the ordinary incidents of prison life in New Jersey, and Plaintiff has no state created liberty interest in avoiding such confinement. See Bowman v. Ricci, No. 07-2610, 2007 WL 2080066, at *2 (D.N.J. July 17, 2007); Lepiscopo v. Harvey, No. 06-3207, 2006 WL 2403903, at *3 (D.N.J. Aug. 18, 2006). This Court will therefore dismiss the due process claim.

**B.   Access to Courts**

Plaintiff asserts that defendants confiscated (or authorized confiscation of) legal materials relating to his challenge to the MCU classification, and did not return these materials. Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). To establish standing, a

prisoner's "complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" <u>Monroe</u>, 536 F.3d at 205-06 (quoting <u>Christopher</u>, 536 U.S. at 416-17).

The <u>Monroe</u> court affirmed the dismissal of inmates' access to the courts claim for failure to state a claim that was based on the confiscation of legal materials:

> [T]he defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under <u>Harbury</u>.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they maintain that they had no other remedy to compensate them for their lost claims.  Even liberally construing their complaints as we must do for <u>pro se</u> litigants, they do not sufficiently allege that they have suffered actual injury.

<u>Monroe</u>, 536 F.3d at 206 (cites and footnote omitted).

The Complaint here suffers the same pleading deficiencies as the complaints in <u>Monroe</u>.  Accordingly, the Court will dismiss the First Amendment access to courts claim.  <u>See</u> <u>Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police</u>, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost). But Plaintiff may be able to correct these pleading deficiencies

11

by filing an amended complaint, and thus the dismissal will be without prejudice to the filing of an amended complaint within 30 days.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).[2]

**C.    Eighth Amendment**

Plaintiff asserts that certain defendants violated his Eighth Amendment rights by accusing him of being a member of two gangs, thereby placing his life in danger.  Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To state a failure-to-protect claim, an inmate must show that he is objectively "incarcerated under conditions posing a substantial risk of serious harm" and the Defendant knows of and disregards that risk.  Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

Plaintiff's claim as written fails to satisfy either the objective element or the subjective element.  He does not show that he was incarcerated under conditions posing a substantial

---

[2] To the extent that Plaintiff raises a due process claim based on the confiscation of his legal materials, that claim is also dismissed.  The Monroe court dismissed the inmates' procedural due process claim on the grounds that pre-deprivation notice is not constitutionally required and the prison grievance procedure provided an adequate post-deprivation remedy for the loss.  See 536 F.3d at 210.

12

risk of serious harm at the hands of corrections officers. Although an inmate need not wait until an actual assault takes place, there must be a "pervasive risk of harm." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Id. Plaintiff does not mention even one prior incident concerning the use of excessive force. Because Plaintiff's allegations do not show that he faced an excessive risk of assault from corrections officers, they fall "short of alleging that the risk to which he was purportedly subjected was substantial." Day v. Fed. Bur. of Prisons, 233 Fed.Appx. 132, 134 (3d Cir. 2007).

Plaintiff's allegations also fail to satisfy the subjective component. Plaintiff asserts that Hayman, Administrator Ricci and James Barbo were responsible, and failed to intercede on his behalf, but Plaintiff does not assert that the named supervisory officials knew that he faced an excessive risk of assault by corrections officers, or "that a substantial risk of . . . attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842.

Plaintiff's allegations do not show that the defendants knew of and disregarded an excessive risk to his safety, and thus the Court is constrained to dismiss the failure-to-protect claim. However, because Plaintiff's allegations do not foreclose the possibility that officials were deliberately indifferent to a known excessive risk of assaults, the dismissal is without prejudice to the filing of an amended complaint that includes a cognizable failure-to-protect claim.

**D.    Retaliation**

An official who retaliates against an inmate for exercising constitutional rights may be liable under § 1983.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quotes and cites omitted). The prisoner must show that the "constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 341 F. 3d at 333-34 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Plaintiff has arguably engaged in conduct protected by the First Amendment by writing the January 5, 2007, letter to the Commissioner challenging his MCU classification and filing an appeal of his classification in the Appellate Division.  But Plaintiff does not suggest that the alleged adverse actions were sufficient to deter a prisoner of ordinary firmness from engaging in the protected conduct.  After all, this civil action is an example of Plaintiff's undeterred efforts to challenge his MCU classification.  Under these circumstances, the Complaint fails to state a cognizable retaliation claim under § 1983 and the claim will be dismissed.  The dismissal is without prejudice to the filing of an amended complaint stating a cognizable retaliation claim.

### IV.  CONCLUSION

The Court grants Plaintiff's application to proceed <u>in forma pauperis</u> and dismisses the Complaint without prejudice to the filing of an amended complaint within 30 days.

                                                s/ Mary L. Cooper
                                                **MARY L. COOPER**
                                                United States District Judge

Dated:  November 10, 2008